IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                           **Case No. 09-40052-01-RDR**

MICHAEL R. "MICK" WUNDER,

        Defendant.

## O R D E R

This order is issued to record the court's rulings upon the issues which arose during the February 19, 2010 sentencing hearing in the above-captioned case. Defendant was sentenced following his jury trial convictions upon several charges. The court wishes to incorporate the presentence report as part of this order and shall not repeat the summary of charges and facts contained therein.

The presentence report discusses defendant's personal history and characteristics, the nature of the offense, defendant's absence of a criminal history, the advisory Sentencing Guidelines, and the factors the court must consider under 18 U.S.C. § 3553 when sentencing. The Sentencing Guidelines provide for a total offense level of 26 and the criminal history category of I. That makes the guideline range in this case 63 to 78 months.

In addition to the presentence report, the court considered the sentencing memoranda from both sides and letters written on behalf of defendant in reaching the sentence in this case.

Government's objection to the presentence report

There was only one objection to the presentence report. That objection came from the government and was denied by the court.

The government's objection pertained to the offense level as controlled by U.S.S.G. § 2C1.1(b)(2). This provision authorizes an increase in the offense level corresponding to:

> "the value of the payment, the benefit received or to be received in return for the payment, the value of anything obtained or to be obtained by a public official or others acting with the public official, or the loss to the government from the offense, whichever is greatest . . ."

This case involves payments made to defendant by David Freeman in connection with defendant's position as a city commissioner for Junction City, Kansas. The presentence report bases the offense level upon the "value of the payments" made to defendant or $19,000. The government argues that the "benefit received or to be received in return for the payment" is the greater figure and should be used to determine the offense level. There are three parts to the government's argument.

First, the government contends that the offense level should be calculated on the basis of money David Freeman's company made on two housing developments approved by the Junction City Commission. The government estimates that Freeman made more than $3,000,000 on the housing developments as 50% owner of the housing development company. The government cites Application Note 3 to § 2C1.1 which describes how to apply that guideline section with the following example: "A $150,000 contract on which $20,000 profit was made was

awarded in return for a bribe; the value of the benefit received is $20,000."

The court does not believe the record demonstrates that the housing subdivisions were authorized "in return for a bribe." The record shows that these subdivisions were authorized in accordance with the pro-development sentiments of the entire Junction City Commission and that the defendant was not the deciding vote to move the subdivisions forward or a decisionmaker whose individual efforts were critical to making the subdivisions a reality. Brennan Fagen, a government witness, testified that Freeman's company did not receive special treatment from the Junction City Commission and other city officers as it attempted, along with numerous companies, to profit from an anticipated boom in the demand for housing in Junction City, Kansas. Rod Barnes, the city manager of Junction City at the time, gave the same testimony. Terry Heldstab, a city commissioner, gave similar testimony. In sum, the record does not demonstrate that the subdivisions were a benefit Freeman obtained with the money paid to defendant.

The court's analysis on this point is comparable to U.S. v. Anderson, 517 F.3d 953, 964 (7th Cir. 2009). In Anderson, a real estate developer made payments to an alderman in Aurora, Illinois. The developer was convicted and a sentencing issue was presented regarding the calculation of the "benefit received" under § 2C1.1. The government argued that part of the "relevant conduct" included money the developer earned from two projects ("Grand Pointe Homes"

and "Misty Creek") which were allegedly aided by bribes the developer gave to the alderman. The court held that the money earned from Misty Creek should not be counted in part because "[t]here was no evidence to show that the Misty Creek project encountered obstacles that would have required [the alderman's] assistance." 517 F.3d at 964. The court made this ruling in spite of a statement from the developer to the FBI that he gave the alderman a flatbed truck for his assistance with Misty Creek. The court also characterized the developer as "highly sophisticated" and hence knowledgeable concerning how to contact the appropriate officials to assist with housing projects.

In this case, David Freeman and defendant were not "highly sophisticated." That is obvious from the trial evidence. The evidence does not establish that the housing subdivisions needed some special treatment or assistance from defendant to be approved by the city authorities of Junction City. Therefore, we do not consider the alleged profit from the housing projects to be a "benefit received" in return for a payment.

It may be asserted that Freeman's alleged profit counts as a "benefit to be received" in return for a payment. The court does not believe this would be a proper construction of § 2C1.1. The court believes the "benefit to be received" would be properly considered when a "benefit" intended in return for a payment is not actually received perhaps because the crime has been interrupted by law enforcement, i.e., in the case of a sting operation or because

the person receiving the payment calls the police. In such a case, it might be appropriate to gauge the offense level of the basis of the benefit "to be received." In this case, however, the payments were made and received, and the housing projects were completed. It is possible to determine whether the housing projects were completed because of the payments. As just noted, the evidence is that the housing projects were not a benefit caused by the payments. If the decisions made by government officials were not affected by illegal payments, then the damage to the public and the government process is less and it makes more sense to the court to determine the "loss" in such a case by the value of the payments.

On the other hand, if the decision to be influenced by the payments was never made because of the intervention of law enforcement, then it might be proper to consider the benefit "to be received" if that unformulated benefit can be established with reliable evidence. The court is not saying that the benefit "to be received" should never be considered, but it is a less reliable gauge of the "loss" to the public when the facts establish that the payments were made, the decisions were made, and the alleged benefits either were or were not accrued because of the payments.

The government's second argument in relation to § 2C1.1 is that the offense level should be increased on the basis of a lot and house allegedly promised to defendant by David Freeman. The evidence on this question is mixed. But, it is clear that no contract was ever signed to provide a lot or a house to defendant

and no effort to build a house for defendant ever got off the ground, in spite of the fact that Junction City authorized the subdivision projects proposed by David Freeman. The court does not believe the evidence is strong enough to find that a house and a lot were "paid" to defendant or were to be obtained by defendant in return for his services.

Finally, the government contends that an alleged $60,000 payment to David Freeman from a Lawrence, Kansas business should be considered in calculating defendant's offense level. This payment was allegedly made in connection with Freeman's help in obtaining the Junction City "opera house" renovation contract for the Lawrence company. We reject this contention for two reasons. First, there is no convincing evidence that the Lawrence company paid David Freeman $60,000. The trial testimony of Angela Peach was that Freeman received $15,000, not $60,000, from the Lawrence business. Second, there is no convincing evidence that defendant did anything in connection with the "opera house" contract. The majority of the evidence was that defendant was not part of the project and that the project proceeded upon sealed bids to which defendant had no access.

For all of these reasons, the court rejected the government's objection to the presentence report.

Downward variance

The court decided to make a downward variance from the guideline range in this case for the following reasons.

The court has considered the nature and circumstances of the offense, the seriousness of the offense, the need to promote respect for the law and provide just punishment. Actions which corrode the public's trust in government and which obstruct the administration of justice are serious crimes in the court's opinion and must be punished for the good of society. Still, the court must acknowledge that unlike most criminal cases before this court, the offenses in this case do not involve violence, or a dangerous drug or weapon, or a large amount of money. The money taken by defendant was not taken from the public, but from another criminal, and the evidence indicates that the housing projects in question would have been approved regardless of the money that was paid.

This was defendant's first criminal offense. He has no prior arrests. His chance of recidivism is less than some other persons who may also have a criminal history category of "I." See U.S. v. Oldani, 2009 WL 1770116 (S.D.W.Va. 2009) (discussing U.S. Sentencing Commission, "Recidivism and the 'First Offender'" May 2004). This distinguishes this defendant from most defendants in this court. The court does not believe a lengthy jail term is necessary to protect the public from further crimes by defendant.

A sentencing judge must consider adequate deterrence. The court believes that prison is not a pleasant place and that most people, particularly people in public positions, genuinely fear any term of several months in prison.

The court has considered defendant's family circumstances,

including defendant's wife's deteriorating eyesight. Criminal punishment often negatively impacts families. While some criminals are themselves a negative influence upon their families, that is not the case here.

The court has also considered the significant number of letters and expressions of support defendant has received from members of his community, as well as the testimonials of defendant's good work in Junction City. This also distinguishes this case from most cases in this court.

After considering all of these factors, the court determined that a sentence of 24 months on each count to run concurrently was the proper term of imprisonment in this case. The court further sentenced defendant to a three-year term of supervised release and directed that a forfeiture judgment in the amount of $19,000.00 be entered against defendant and in favor of the United States.

**IT IS SO ORDERED.**

Dated this 22nd day of February, 2010 at Topeka, Kansas.

s/Richard D. Rogers
United States District Judge